# D. J. McCarty
## v.
## State of Illinois.

*Opinion filed January 1, 1909.*

1. DAMAGES—*for loss of hay crop.* Claimant's crop of hay was damaged by the overflow of water caused by placing water-gates in a brook adjacent to the State School for the Deaf and Dumb at Jacksonville, Illinois. *Held,* that claimant is entitled to an award covering the amount of his damages.

2. RIPARIAN RIGHTS—*owner of land has.* The owner of land over which a stream flows has a usufruct in the water while it passes, but cannot arrest its flow to the damage of others. (*Druley* v. *Adams,* 102 Ill., 177; *Batavia Mfg. Co.* v. *Newton Wagon Co.,* 91 Ill., 230.)

R. L. Montgomery, for Claimant.
W. H. Stead, Attorney General, for State.

Claimant in the above entitled cause filed his claim on the 28th day of February, A. D. 1908, for the sum of one hundred five ($105.00) dollars, with the Auditor of Public Accounts of the State of Illinois. The Attorney General of the State of Illinois filed the general issue to said claim. The claimant filed depositions in support of his claim.

This is a claim for damages sustained by reason of damage to a crop of hay that was cut and lying in the swath on three and one-half acres of land, which is adjacent to certain land occupied by the State School for the Deaf at Jacksonville, Illinois. The premises in question were leased by the claimant of Thomas Allen, the latter part of June or during the month of July, in the year 1907. The said premises were leased on share rent. Under the terms of the lease, the landlord was to receive one-half of the crop from the claimant for harvesting the hay.

The said hay land is just along a brook in which was constructed water gates, for the purpose of backing up the water to furnish a supply in a reservoir

for the use of the said school, and which said water gates and reservoir were under the sole control and management of the said school.

On the 4th day of August, 1907, the said gates being closed, the water in the brook, after heavy and continuous raining at the time in question, backed up and overflowed approximately three and one-half acres of the said rented hay or meadow land of claimant.

It appears from the evidence that the said three and one-half acres would have yielded approximately two and one-half tons per acre, a total of eight and three-fourths tons of hay. It appears from the evidence that there was about one-eighth of an acre of the said three and one-half acres of meadow land, that was high land, and that the overflow of water did not reach the hay at that place.

It appears from the evidence that the managers of the said school were duly notified as to the probable results that would be caused by keeping the said gates in the said brook closed, but that even after having said notice, the gates in the brook were permitted to remain closed and to obstruct the water in the said brook in its natural water course.

It appears from the evidence that the hay in question had been cut on or about the third day of August, 1907, and had been left lying in the swath as cut, and that heavy rains fell on the fourth, fifth and sixth days of August, 1907. It appears from the evidence that these rains would have colored and decreased the strength of the hay. It is quite natural that some sediment would have been dashed against the hay in question by the said heavy rains.

It appears, however, from the evidence, that the said water gates in question were of sufficient size to molest and obstruct the water in its natural water course, and that a part of the damage to the hay in question resulted from the said obstruction. It is therefore the conclusion of the Court that a part of the damage to the said hay was caused by reason of

the said gates having been kept closed as aforesaid, and that the said hay would have been seriously damaged from the heavy continuous rains.

It appears from the evidence that Thomas Allen, the owner of the land in question, and his father, who are witnesses in behalf of the claimant for the full amount of damages sustained by reason of the said overflow, and that the said Allen consents and acquiesces that the said claimant shall collect the full amount of damages sustained by reason of the said overflow.

The attorney for the claimant cites the following in support of the said claim:

"The owner of land, over which a stream flows, has a usufruct in the water while it passes, but cannot arrest its flow to the injury of others."

> *Druley* v. *Adams,* 102 Ill., 177; *Batavia Mfg.*
> *Co.* v. *Newton Wagon Co.,* 91 Ill., 230.

"The grantee of land bordering on a non-navigable stream is entitled to recover damages against the party who, to his injury, diverts the water passing over his land from its natural channel."

> *Board of Trustees of Illinois and Michigan*
> *Canal* v. *Haven,* 5 Gilman, 548.

"Persons in whose behalf, and under whose direction, a suit is prosecuted or defended in the name of some other person, are bound by the judgment."

> *Anderson* v. *Chic. Ry. Co.,* 200 Ill., 329.

It appears that claimant and the landlord have mutually agreed that the claimant in the above entitled cause should collect the total amount of damages by them mutually sustained, and that the matter of damages or rent between them would be amicably adjusted.

It is the opinion of the Court that the claimant has sustained damages by reason of the said water gates having been closed as aforesaid. It is the conclusion of the Court that the claimant be allowed the sum of fifty $50.00) dollars in full for all damages sustained as stated aforesaid.